UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY M. SCHREINER,

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

_____

<u>DECISION & ORDER</u>

19-CV-0189MWP

## <u>**PRELIMINARY STATEMENT**</u>

Plaintiff Anthony M. Schreiner ("Schreiner") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 15).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 11). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Schreiner's motion for judgment on the pleadings is denied.

## DISCUSSION

### I.   Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*).  The five steps are:

> (1)     whether the claimant is currently engaged in substantial gainful activity;

> (2)     if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

> (3)     if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

> (4)     if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his] past work; and

> (5)     if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'"  *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


II.   **The ALJ's Decision**

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims.  Under step one of the process, the ALJ found that Schreiner had not engaged in substantial gainful activity since February 16, 2015, the amended alleged onset date. (Tr. 23-39).[1]  At step two, the ALJ concluded that Schreiner had the severe impairments of "fibromyalgia, chronic pain syndrome, other specified inflammatory polyarthropathies and arthritis, migraine headaches, mucosa-associated lymphoid tissue ("MALT") lymphoma of the eyes and right eye conjunctivae edema, myalgias and cervicalgia."  (*Id.*).  The ALJ also found that Schreiner had been diagnosed with hyperlipidemia, insomnia, anxiety and depression, but that these conditions were non-severe.  (*Id.*).  With respect to Schreiner's mental limitations, the ALJ concluded that they only caused mild limitations in his ability to understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage himself; and no limitations in his ability to interact with others.  (*Id.*).  Accordingly, the ALJ concluded that Schreiner's mental symptoms "only marginally impact[ed] [his] ability to function independently, appropriately, and effectively on a sustained basis."  (*Id.*).  At step three, the ALJ determined that Schreiner did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings.  (*Id.*).

---

[1]  The administrative transcript (Docket # 8) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

The ALJ concluded that Schreiner retained the RFC to perform light work but with certain limitations.  (*Id.*).  Specifically, the ALJ found that Schreiner could perform work requiring him to occasionally climb stairs, ropes, ladders, scaffolds, stoop, kneel, crouch and crawl, and frequently reach overhead bilaterally and all other directions, finger, handle and feel bilaterally, but could not perform work that would require him to read small 10-point print type or expose him to bright, flashing, flickering lights or vibrations, outside work, workplace hazards, sharp objects, tools or knives.  (*Id.*).

At step four, the ALJ found that Schreiner was capable of performing his past relevant work as a retail sales clerk, order clerk, and in retail management.  (*Id.*).  Alternatively, the ALJ proceeded to step five and concluded based on Schreiner's age, education, work experience, and RFC, that other jobs existed in significant numbers in the national economy that Schreiner could perform, such as mail room clerk, cashier II, and stock checker.  (*Id.*).  Accordingly, the ALJ found that Schreiner was not disabled.  (*Id.*).

III.    **Schreiner's Contentions**

Schreiner contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket ## 9-1, 14).  First, Schreiner argues that the ALJ erroneously determined that his mental health impairments of anxiety and depression were non-severe at step two and that this error was not harmless because she failed to consider limitations associated with these impairments in formulating the RFC. (Docket # 9-1 at 20-22).  Second, Schreiner contends that the ALJ erred because she relied on stale medical opinions rendered before his MALT lymphoma diagnosis in formulating the RFC, which resulted in the ALJ improperly reaching an RFC determination based upon her lay

interpretation of the medical evidence.  (Docket ## 9-1 at 24-25; 14 at 3-9).  Finally, Schreiner

maintains that the ALJ improperly applied Social Security Ruling 12-2p by requiring objective

evidence to support Schreiner's subjective complaints that he suffered from pain caused by

fibromyalgia and mischaracterized the record in concluding that his subjective complaints were

inconsistent with the record as a whole.  (Docket ## 9-1 at 22-23, 25-29; 14 at 2-3).


IV.   **Analysis**

   A.   **The ALJ's Step Two Determination**

          I turn first to Schreiner's step two argument.  Schreiner maintains that the ALJ

erred by concluding that his mental health impairments were not severe – an error that was not

harmless because, despite the ALJ's explicit acknowledgement that she considered both severe

and non-severe impairments, "it is not clear" that she considered Schreiner's mental impairments

in formulating the RFC.  (Docket # 9-1 at 21-22).  The Commissioner responds that the ALJ's

determination that Schreiner's mental health impairments were non-severe was supported by the

record and that, in any event, the ALJ explicitly considered these impairments during the

remainder of the sequential evaluation and correctly concluded that they did not cause any

functional limitations.  (Docket # 11-1 at 12-16).  Upon review, I find that remand is not

warranted based on the ALJ's step two determination.

          At step two of the evaluation, the ALJ must determine whether the claimant has a

"severe impairment" that "significantly limits [the claimant's] physical or mental ability to do

basic work activities."  20 C.F.R. §§ 416.920(a)(4)(ii), (c).  "An impairment or combination of

impairments is 'not severe' when medical and other evidence establishes only a slight

abnormality or a combination of slight abnormalities that would have at most a minimal effect on

an individual's ability to perform basic work activities." *Jeffords v. Astrue*, 2012 WL 3860800,

*3 (W.D.N.Y. 2012) (quoting *Ahern v. Astrue*, 2011 WL 1113534, *8 (E.D.N.Y. 2011)); *see also*

*Schifano v. Astrue*, 2013 WL 2898058, *3 (W.D.N.Y. 2013) ("[a]n impairment is severe if it

causes more than a *de minimus* limitation to a claimant's physical or mental ability to do basic

work activities").  "[T]he mere presence of a disease or impairment, or establishing that a person

has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a

condition severe." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (quotations

omitted).  Moreover, as a general matter, any error in an "ALJ's severity assessment with regard

to a given impairment is harmless . . . 'when it is clear that the ALJ considered the claimant's

[impairments] and their effect on his or her ability to work during the balance of the sequential

evaluation process.'" *Graves v. Astrue*, 2012 WL 4754740, *9 (W.D.N.Y. 2012) (alteration in

original) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 153 (N.D.N.Y. 2012)).

　　　　In this case, any step-two error by the ALJ in finding Schreiner's mental

impairments non-severe was harmless because the ALJ proceeded through the sequential

evaluation and explicitly considered Schreiner's mental health impairments during the

subsequent analysis.  Contrary to Schreiner's contention, the ALJ's statement that she considered

Schreiner's non-severe impairments in formulating the RFC was more than a passing

acknowledgment of the correct legal standard.  (*See* Tr. 28 ("[a]lthough the undersigned finds

these impairments to be non-severe, the undersigned considered their limiting effects in

determining the [RFC] under the findings below").  Rather, her decision makes clear that she

considered Schreiner's mental impairments throughout the sequential evaluation, but concluded

that they did not cause any functional limitations.  (Tr. 30-36).  Indeed, in formulating the RFC,

the ALJ explicitly recognized that Schreiner claimed to suffer from mental impairments, but

noted that he did not participate in any ongoing mental health therapy or counseling.  (Tr. 31).

The ALJ also considered and relied upon the opinions of state consulting physicians S. Bhutwala

("Bhutwala"), PhD, who opined that Schreiner's mental impairments were not severe, and

Christine Ransom ("Ransom"), PsyD, who opined that Schreiner did not suffer from any mental

limitations in his ability to perform work-related functions.  (Tr. 35 (citing Tr. 117, 308-309).

Accordingly, I conclude that any error at step two was harmless.  *See London v. Comm'r of Soc.*

*Sec.*, 339 F. Supp. 3d 96, 106-107 (W.D.N.Y. 2018); *Schifano v. Astrue*, 2013 WL 2898058 at *3

("[w]here a finding of a severe impairment is improperly omitted, the error may be deemed

harmless where the disability analysis continues and the ALJ considers the omitted impairment

in the RFC determination") (citing *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013)

(summary order)).

In any event, substantial evidence in the record supports the ALJ's conclusions

that Schreiner's mental impairments "only marginally impact [his] ability to function

independently, appropriately, and effectively on a sustained basis[,] . . . [and that they] cause no

more than 'mild' limitation in any of the functional areas."  (Tr. 28).  Indeed, the record

demonstrates that Schreiner received limited treatment to address mental health impairments,

primarily in the form of medication prescribed by his primary care physician.  (Tr. 405, 485, 507,

520).  During the administrative hearing, Schreiner's attorney conceded that his mental health

impairments were not severe (Tr. 54), and Schreiner himself repeatedly stated that he was able to

manage his symptoms through medication and meditation (Tr. 71, 307, 309).  Accordingly, I do

not find that remand is warranted on this basis.

**B.**     <u>The ALJ's RFC Determination</u>

I turn next to Schreiner's challenge to the ALJ's RFC assessment on the grounds that she improperly relied upon an opinion authored by state consultant John Schwab ("Schwab"), DO.[2]  (Docket ## 9-1 at 23-24; 14 at 3-8).  Specifically, Schreiner maintains that Schwab's opinion was stale due to his subsequent diagnosis of MALT lymphoma, rendering the ALJ's reliance upon the opinion improper and the resulting RFC assessment unsupported by any medical opinion of record.  (*Id.*).

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

In reaching the RFC assessment, the ALJ gave "great weight" to the August 20, 2015 opinion authored by Schwab.  (Tr. 35).  At the time of Schwab's evaluation, Schreiner

---

[2]  Although Schreiner contends that each of the medical opinions contained in the record is stale, the only opinion he specifically identifies as failing to account for his lymphoma is Schwab's consultative opinion, which was the only consulting opinion that addressed his physical impairments.  (Docket # 14 at 5 ("The ALJ assigned 'great weight' to the Administration's consultative physician, Dr. Schwab's, opinion Plaintiff should avoid bright lights that could trigger a migraine and adopted this limitation in the RFC.")).

reported that he had suffered from fibromyalgia, pain in his neck, and migraines. (Tr. 312-15).

He reported constant, stabbing pain in his neck that caused him to suffer migraines. (*Id.*).

According to Schreiner, sitting and standing exacerbated his fibromyalgia pain and bright lights

and noise exacerbated his migraines. (*Id.*). Schreiner reported that he alleviated his pain with

sleep, meditation, and pain medication. (*Id.*).

Upon physical examination, Schreiner appeared to be in no acute distress, had

normal gait, used no assistive devices, had a normal stance, and could get on and off the

examination table, and rise from a chair without difficulty. (*Id.*). Schreiner declined to attempt

to walk on his heels and toes or to squat. (*Id.*). His musculoskeletal evaluation demonstrated

limited range of motion in Schreiner's cervical and lumbar spine and shoulders, but normal range

of motion in his elbows, forearms, wrists, hips, knees, and ankles. (*Id.*). The sitting straight leg

raise was positive bilaterally. (*Id.*). Schreiner's joints were stable and nontender, but he had

trigger points in his hands, elbows, neck, shoulder, hips and feet, for a total of eighteen trigger

points. (*Id.*). Neurologically, Schreiner had intact sensation and full strength in his upper and

lower extremities. (*Id.*). Schreiner also had intact hand and finger dexterity and full grip

strength bilaterally. (*Id.*). In Schwab's view, Schreiner's prognosis was "stable," and he opined

that the results of Schreiner's physical examination were "out of proportion to his stated

problem." (*Id.*). Schwab assessed that Schreiner had a mild restriction to raising his arms above

shoulder height and should avoid any activity such as bright lights or noise that could trigger a

migraine. (*Id.*).

The ALJ's RFC assessment that Schreiner could perform light work with certain

specified limitations, including only frequent overhead reaching and avoidance of bright,

flashing, or flickering lights and more than moderate noise, accounted for the limitations

identified by Schwab.  (Tr. 30).  According to the ALJ, Schwab's assessment was consistent with

the longitudinal treatment records, as well as the objective findings identified by Schwab upon

evaluation.  (Tr. 35).  In addition, in her decision, the ALJ specifically recognized Schreiner's

subsequent diagnosis of MALT lymphoma in his right eye, for which he was evaluated and

received treatment.  (Tr. 34).

According to the medical records, in October 2016, Schreiner was evaluated by

Frederick Hong, MD, at CCS Healthcare, who diagnosed a lesion on Schreiner's right eye as

MALT lymphoma and suggested radiation treatment if the cancer was sufficiently localized.

(Tr. 369-73, 379-81).  In November 2016, Schreiner received a second opinion from Francisco

Hernandez ("Hernandez"), MD, at Roswell Park Cancer Institute.  (Tr. 383-87).  Although

radiation treatment was recommended, Schreiner apparently did not follow through with this

recommended course of treatment.[3]  (Tr. 398-99, 404-406).  In January 2017, a new lesion

developed on Schreiner's left eye, which was not conclusively diagnosed as lymphoma.

(Tr. 409-10, 432).

In February 2017, Schreiner returned to Roswell for treatment of his lymphoma.

(Tr. 436-43).  Again, Hernandez recommended radiation, but Schreiner opted to pursue

rituximab monotherapy.  (Tr. 425-34).  Throughout March 2017, Schreiner received four doses

of the rituximab monotherapy, resulting in almost complete resolution of his eye lesions.[4]

(Tr. 448-63).  Hernandez recommended that Schreiner continue to have extended Rituxan

---

[3] It is not clear whether Schreiner declined this treatment option or failed to follow through with treatment. Although he initially expressed apprehension concerning the proposed treatment, he subsequently agreed to undergo radiation therapy.  (Tr. 398, 404-407).  Subsequent records suggest, however, that Schreiner failed to return for treatment at Roswell after electing to pursue radiation in November 2016 and that he did not return to Roswell for further treatment until February 2017.  (Tr. 421-23, 425-34, 436-43).

[4] After his cancer treatment, Schreiner did complain of a "floater" in his left eye, for which he was referred for a retinal consultation.  (Tr. 455).  After evaluation, Christopher M. Jermak, MD, recommended no treatment other than continued monitoring.  (Tr. 456-57).

therapy, but Schreiner declined that recommended treatment.  (Tr. 459-63).  Hernandez also recommended ongoing monitoring.  (*Id.*).

Schreiner challenges the ALJ's reliance on Schwab's opinion because he did not consider Schreiner's lymphoma, a condition that developed after the opinion was rendered. (Docket ## 9-1 at 23-25; 14 at 3-8).  Schreiner is generally correct that "an ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history," *Robinson v. Berryhill*, 2018 WL 4442267, *4 (W.D.N.Y. 2018), and that "[m]edical source opinions that are stale and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding," *Davis v. Berryhill*, 2018 WL 1250019, *3 (W.D.N.Y. 2018) (alterations, citations, and quotations omitted).  That said, "a medical opinion is [not] stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]."  *Hernandez v. Colvin*, 2017 WL 2224197, *9 (W.D.N.Y. 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order)); *accord Morgan v. Astrue*, 2010 WL 3723992, *13 (E.D. Tenn.) ("[i]n every claim for DIB or SSI before an ALJ, some time will elapse between the date that a medical opinion about the claimant's condition is rendered and the date that the ALJ considers that opinion[;] [f]requently, new evidence about the claimant's condition will come to light during the intervening period of time[;] [t]he SSA's disability determination process would cease to function if ALJs could not rely on a medical opinion simply because some new evidence entered the record after the opinion was provided"), *report and recommendation adopted by*, 2010 WL 3723985 (E.D. Tenn. 2010).  Here, I disagree that Schwab's consultative medical opinion was rendered stale by Schreiner's subsequent diagnosis of MALT lymphoma, and I find that the RFC is otherwise supported by substantial evidence.

In this case, Schreiner has not demonstrated that the record evidence relating to the MALT lymphoma impairment undermines Schwab's medical opinion.  As referenced above, in his 2015 evaluation, Schwab assessed that Schreiner complained of pain and migraines and that Schreiner was limited in his ability to reach overhead and was sensitive to noise and bright light as a result of his migraines.  (Tr. 312-15).  Medical evidence post-dating Schwab's opinion, which the ALJ considered, does not appear to be inconsistent with Schwab's assessment.

Schreiner maintains that the records demonstrate that the lymphoma caused him aggravated symptoms, specifically greater fatigue and more sensitivity to bright lights, which he maintains were not adequately accounted for by Schwab or the ALJ.  (Docket # 14 at 5-8).  I disagree.  Throughout his treatment for lymphoma, Schreiner generally did not complain of eye pain or vision loss, with the exception of a stationary floater and some dryness.[5]  (Tr. 355-57, 363-65, 366-67, 376-78, 379-81, 383-87, 389-99, 400-402, 404-407, 408-10, 421-23, 425-34, 436-43, 444-46, 448-52, 453-55, 459-63).  Nor do his treatment records reflect any complaints of increased sensitivity to light as a result of his lymphoma diagnosis or treatment.  (*Id.*).  With the exception of a single reference to his eyes feeling tired (Tr. 376), and a notation that he had experienced a change in his energy levels (Tr. 370), both of which are contained in October 2016 records, Schreiner's lymphoma-related treatment records are devoid of any complaints of increased fatigue.  (Tr. 355-57, 363-65, 366-67, 379-81, 383-87, 389-99, 400-402, 404-407, 408-10, 421-23, 425-34, 436-43, 444-46, 448-52, 453-55, 459-63).  Indeed, during several treatment visits Schreiner denied any change in his energy levels or experiencing fatigue. (Tr. 380, 384, 460).

---

[5] Schreiner did describe some discomfort or a foreign body sensation directly after the biopsies performed on his eyes, both of which improved with time.  (Tr. 363, 366, 421, 444-46).

Nor does Schreiner's hearing testimony support his current contention that he suffered increased limitations as a result of his lymphoma. To the contrary, during the administrative hearing, Schreiner's attorney conceded that Schreiner was doing "fairly well" with respect to his lymphoma, and Schreiner testified that the treatments he received had appeared to be effective, but that he continued to be monitored for any reoccurrence. (Tr. 54, 74-75). Although he testified at length that he suffered from substantial sensitivity to light (Tr. 76, 78, 80, 83-84), his testimony does not suggest that the sensitivity was related to his lymphoma. Indeed, Schreiner previously complained of sensitivity to light in connection with his migraines – an impairment and associated limitation that were explicitly considered and accounted for by Schwab and the ALJ. (Tr. 26, 30, 235, 312-15).

Taken together, the record evidence does not demonstrate a deterioration in Schreiner's functional ability as a result of MALT lymphoma that would render Schwab's assessment unreliable. Rather, the medical records demonstrate that although Schreiner was diagnosed with lymphoma, the condition largely resolved with treatment. Nothing in the record suggests that Schreiner suffered from functional limitations as a result of his lymphoma. To the contrary, the records repeatedly demonstrate that he generally did not complain of eye pain, light sensitivity, fatigue, or visual disturbances despite the diagnosis and treatment. They also demonstrate that, with the exception of ongoing monitoring to ensure that the condition did not reoccur, he did not require any ongoing treatment for the lymphoma.

In short, Schreiner neither points to any medical evidence suggesting that after Schwab's opinion was rendered his condition deteriorated causing disabling functional limitations, nor identifies any relevant evidence post-dating the medical opinions that the ALJ failed to consider. For these reasons, I find that substantial evidence supports the ALJ's RFC

assessment. *See*, *e.g.*, *Abate v. Comm'r of Soc. Sec.*, 2020 WL 4597315, *6 (W.D.N.Y. 2020)

("[a]lthough the record included surgery for [p]laintiff's left knee and the additional cervical

impairment, such events did not render [the consulting physician's] opinion impermissibly

stale[;] . . . [p]laintiff fails to show any additional limitations caused by these subsequent medical

events[,] . . . [and] the ALJ considered [p]laintiff's knee impairments and cervical spine MRI in

formulating her RFC determination"); *Ambrose-Lounsbury v. Saul*, 2019 WL 3859011, *3-4

(W.D.N.Y. 2019) ("[claimant] has not shown significant developments in her medical history

following [consultative examiner's] opinion that render it stale[;] . . . [claimant's] only new

ailment after [consultative examiner's] examination was the 'left ankle swelling'[;] . . . [b]ut the

record does not evidence any limitation from that swelling that the ALJ did not account for in the

RFC[;] [s]o the ankle swelling is hardly a 'significant development'"); *Sexton v. Berryhill*, 2018

WL 1835494, *7 (W.D. Okla.) (finding no error where ALJ relied on opinion evidence that was

completed "before all of the medical evidence was in and [[p]laintiff] became more severe[;] . . .

[h]ere, however, the opinions of the state agency physicians are relevant to the period to which

they apply, and [p]laintiff does not identify any evidence of a subsequent deterioration in

[p]laintiff's condition that was not reviewed and considered by the ALJ[;] [t]he ALJ expressly

stated that additional evidence . . . was received and admitted into the record subsequent to the

hearing and that he reviewed this evidence and considered it in his determination[;] . . . [b]ecause

the ALJ independently reviewed and considered the post-2014 evidence, and [p]laintiff points to

no credible evidence inconsistent with the RFC, the undersigned finds no reversible error in the

ALJ's reliance on the agency physicians' opinions"), *report and recommendation adopted by*,

2018 WL 1858255 (W.D. Okla. 2018); *Morgan v. Astrue*, 2010 WL 3723992 at *13 ("[i]n this

case, [p]laintiff has not shown that the additional objective evidence he cites was inconsistent

with the opinions of [consultative physicians][;] . . . [p]laintiff has not explained how a review of the new evidence he cites would have changed the opinions provided by [consultative physicians][;] [a]ccordingly, the [c]ourt cannot find error in the ALJ's decision to rely upon the doctors' opinions").

   In view of my finding that Schwab's opinion was not stale, Schreiner's argument that his RFC is unsupported by any medical opinion also fails.  (Docket ## 9-1 at 23-25; 14 at 3-8).  The ALJ's RFC finding accounts for the limitations assessed by Schwab, while also crediting Schreiner's hearing testimony in assessing additional limitations.  I find that the ALJ's RFC determination is supported by medical opinion evidence and is not the product of the ALJ's own lay interpretation of the evidence.  *See O'Sullivan v. Comm'r of Soc. Sec.*, 2020 WL 1180659, *7 (W.D.N.Y. 2020) ("although the ALJ did not find that the subsequent treatment evidenced any 'notable changes or worsening,' she nonetheless considered the subsequent information and [the plaintiff's] subjective allegations when formulating the RFC[;] . . ."[t]he ALJ did not err . . . by including greater limitations in her RFC determination than those opined by [the consulting physician]).

   Schreiner also argues for the first time in his reply brief that the ALJ erred by not considering notations in Hernandez's treatment notes that Schreiner was unable to carry on normal activity or work.  (Docket # 14 at 6 (citing Tr. 383, 427)).  First, the Court need not consider arguments raised for the first time in reply papers.  *See Jones v. Astrue*, 2013 WL 802778, *5 (E.D.N.Y. 2013) (claimant's argument procedurally deficient when not raised in its opening brief) (collecting cases).  Second, Hernandez's notation that Schreiner was unable to work was wholly conclusory and amounted to a determination reserved for the Commissioner. As such, it was not entitled to significant weight.  *See Huyck v. Colvin*, 2017 WL 2957867, *9

16

(W.D.N.Y. 2017) (collecting cases).  Finally, other treatment notes authored by Hernandez

contain notations suggesting that Schreiner was capable of work activity.  (*See* Tr. 389, 391, 425,

437, 438, 469).  For these reasons, I conclude that remand is not warranted on this basis.

      **C.**        **The ALJ's Assessment of Schreiner's Subjective Complaints**

      I turn finally to Schreiner's contention that the ALJ erred in determining that

Schreiner's subjective complaints were inconsistent with the record as a whole.  (Docket ## 9-1

at 22-23, 25-29; 14 at 2-3).  Schreiner challenges the ALJ's assessment of his subjective

complaints on several grounds.  First, he argues that the ALJ improperly discounted his

fibromyalgia-related complaints based upon the lack of objective evidence in contravention of

Social Security Ruling 12-2p.  (Docket ## 9-1 at 22-23, 25-26; 14 at 2-3).  Second, Schreiner

maintains that the ALJ mischaracterized material facts in evaluating his subjective complaints

and erroneously interpreted the stability of his condition to mean that his condition was not

severe.  (Docket # 9-1 at 27-29).  Next, Schreiner maintains that the ALJ improperly failed to

consider his work history.  (*Id.* at 29).  Finally, Schreiner contends that the ALJ erroneously

discounted the testimony provided by his mother.  (*Id.* at 26).  For the reasons explained below,

Schreiner's challenges are without merit.

      An evaluation of subjective complaints should reflect a two-step analysis.  *See* 20

C.F.R. §§ 404.1529, 416.929.[6]  First, the ALJ must determine whether the evidence shows that

the claimant has a medically determinable impairment or impairments that could produce the

relevant symptoms.  *See id.*  Next, the ALJ must evaluate "the intensity, persistence, or

---

[6]  The evaluation of symptoms outlined in these regulations was previously referred to as a "credibility" assessment.  Recent guidance has clarified that the sub-regulatory policy will no longer use the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character."  *See* SSR 16-3p, 2017 WL 5180304, *1 (Oct. 25, 2017).

functionally limiting effects of [the] symptom[s]." *Id.*  The relevant factors for the ALJ to weigh include:

> (1) [the claimant's] daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms . . . ; and (7) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)).

Here, the ALJ concluded that Schreiner's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Tr. 32). In doing so, the ALJ assessed Schreiner's subjective complaints in the context of the entire record.  First, the ALJ considered Schreiner's daily activities, finding them to be inconsistent with the degree of functional limitation alleged by Schreiner.  (*Id.*).  Next, the ALJ identified several inconsistencies between Schreiner's allegations and the record evidence and noted instances of Schreiner's non-compliance with treatment, both of which provided a basis to discount Schreiner's allegations.  (*Id.*).  Finally, the ALJ considered the medical record evidence and concluded that, although Schreiner had a longstanding history of treatment, the evidence did not support the degree of limitations alleged by Schreiner.  (Tr. 32-34).

I turn first to Schreiner's contention that the ALJ impermissibly rejected his fibromyalgia-related complaints based upon a lack of objective evidence.  (Docket ## 9-1 at 22-23; 14 at 2-3).  I disagree.

Although Schreiner is correct that "fibromyalgia frequently presents without objective evidence, and that it would be erroneous to dismiss [his] subjective complaints based purely on a lack of corroborating evidence," *see Doughtery-Noteboom v. Berryhill*, 2018 WL 3866671, *7 (W.D.N.Y 2018), "[a] fibromyalgia diagnosis does not automatically render a claimant disabled," *Ryan v. Comm'r of Soc. Sec.*, 2019 WL 2497904, *3 (W.D.N.Y. 2019), and the ALJ should evaluate subjective complaints of pain by considering, in addition to any objective evidence, other factors including daily activities, medications and treatments, compliance, and statements by other people, *see* SSR 12-2p, 2012 WL 3104869, *5 (2012).  In my estimation, the ALJ complied with the applicable standard.

In her decision, the ALJ evaluated Schreiner's complaints of pain in the context of the record as a whole, including his activities of daily living, compliance with treatment, and medical evidence demonstrating improvement in his condition with medication management. (Tr. 32-34).  In doing so, the ALJ specifically recognized that Schreiner had been diagnosed as suffering from fibromyalgia, including having approximately eleven out of eighteen tender points.  (Tr. 33).  She also recognized that although Schreiner had a lengthy history of treatment for pain, his treatment records reflected that he "reported improvement in his chronic pain syndrome and fibromyalgia conditions and deni[ed] significant increase in joint pains or stiffness."  (*Id.*).  Nowhere in the decision did the ALJ discount Schreiner's complaints of pain based upon a lack of objective evidence.

I turn next to Schreiner's contentions that the ALJ mischaracterized the evidence concerning his activities of daily living in evaluating his subjective complaints and erroneously equated descriptions of his stable condition with a conclusion that his condition was not severe. (Docket # 9-1 at 27-29).  In her decision, the ALJ summarized Schreiner's lengthy treatment

history with his rheumatologist, Edgardo Salvador ("Salvador"), MD.  (Tr. 32-33).  Contrary to

Schreiner's contention, I find that the ALJ correctly characterized those treatment records as

demonstrating that Schreiner's pain responded well to medication management, resulting in

improvement of his condition with treatment.  Indeed, treatment notes from 2016 and 2017

demonstrate that Schreiner's pain generally improved and reflect Salvador's assessment that

Schreiner had responded "well" to his prescribed medication regimen.  (*See*, *e.g.*, Tr. 485-86

("[p]atient continues to do well on current medications[;] [s]ymptoms are stable[;] [t]here is no

need to change therapy[;] [p]atient continues to get relief from [his] narcotic analgesics[;] [t]here

ha[s] been no worsening of symptoms[;] . . . symptoms are adequately controlled with

medication[;] [h]ydrocodone still controls significant amount of pain"), Tr. 487-88 ("symptoms

are improved with medications[] . . . [p]atient continues to get relief with [his] narcotic

analgesics[;] [t]here ha[s] been no worsening of symptoms[;] [n]o change in therapy needed"),

Tr. 501 ("[p]atient continues [to] improve on current medications[;] [t]here ha[s] been no

increase in joint pains or stiffness[;] [t]here is no need to change therapy").

       Schreiner maintains that the ALJ improperly concluded that he was able to "play

guitar, care for a cat, tend to personal hygiene, prepare simple meals, engage in household

chores, visit with friends and family, shop, use a smart phone, use a gaming device, handle

finances, and watch television."  (*Id.*).  According to Schreiner, his testimony during the hearing

demonstrated that he either did not or could not fully perform these activities.  (*Id.*).

       As noted by the Commissioner, however, there was conflicting evidence in the

record regarding several of Schreiner's activities of daily living, and it was within the ALJ's

discretion to resolve those conflicts.  (Docket # 11-1 at 27).  For example, although Schreiner

indicated in his function report that his girlfriend primarily cared for his cat, when asked during

the hearing whether he cared for any pets, Schreiner responded, "I have a cat," and indicated that his mother helped with feedings.  (Tr. 58-59, 226).  With respect to his ability to prepare meals, although Schreiner testified that his mother provided his meals, he conceded during the hearing that he was capable of using a microwave and making a sandwich.  (Tr. 59).  Although he testified that he had been unable to play guitar for several years, during his 2015 evaluation by Schwab he reported that his hobbies included playing the guitar.  (Tr. 77, 229, 312).  Although he did not testify during the hearing that he visited with friends and family (other than his mother), his previous reports indicated that he did so.  (Tr. 229, 309).  Additionally, although he indicated that his personal grooming tasks took time, the record demonstrates that he performed those tasks without assistance.  (Tr. 226-27, 309, 312).

In sum, although Schreiner maintains that the ALJ mischaracterized his ability to engage in several activities of daily living, he fails to point to any specific mischaracterization.  Rather, Schreiner's challenge amounts to a disagreement with the ALJ's consideration of conflicting evidence.  "[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support her position."  *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, *6 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016).  Rather, he must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record."  *Id.*; *see also Avant v. Colvin*, 2016 WL 5799080, *3 (W.D.N.Y. 2016) ("[a]ll of [p]laintiff's arguments focus on the substantiality of the evidence supporting the ALJ's decision[;] [h]owever, as the Second Circuit has explained, 'whether there is substantial evidence supporting the claimant's views is not the question . . . , rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision'")

(quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (brackets omitted)).  The ALJ's decision in this case demonstrates that she weighed the record evidence, including the conflicting evidence; no basis exists for this Court to overturn the ALJ's assessment of the evidence or her resolution of the conflicts in it.  *See Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, *9 (N.D.N.Y. 2015) ("[i]t is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[;] . . . [the ALJ] properly considered the totality of the record evidence, and concluded that the evidence quoted above outweighed [plaintiff's] evidence to the contrary") (internal quotation omitted).

Schreiner's remaining contentions likewise lack merit.  Schreiner argues that the ALJ failed to properly consider his strong work history[7] in evaluating his subjective complaints. (Docket # 9-1 at 29).  Yet, "it is clear from the decision that the ALJ was aware of [Schreiner's] work history and found [him] partially incredible in spite of that history." *Lewis v. Colvin*, 2017 WL 1046744, *3 (W.D.N.Y. 2017).  Indeed, during the administrative hearing, Schreiner testified at length concerning his previous employment.  (Tr. 63, 65-68, 81-82).  The ALJ's discussion of Schreiner's subjective complaints did not specifically mention his work history, focusing instead on his activities of daily living, several inconsistencies between his testimony and the record, and his noncompliance with treatment recommendations.  (Tr. 32-33).  I nonetheless conclude that "[n]o, different conclusion is warranted by the ALJ's failure to reference specifically [Schreiner's] good work history [in her discussion], because substantial evidence aside from work history supports" the ALJ's determination that Schreiner's subjective

---

[7] As noted by the Commissioner, it is not clear that Schreiner's work history may properly be characterized as "strong."  (Docket # 11-1 at 28).  Although he had earnings in most years before applying for benefits, his earnings varied substantially during several of those years and were nonexistent in 2000.  (Tr. 208).

complaints were not fully consistent with the record.  *See Lewis v. Colvin*, 2017 WL 1046744 at *3; *see also Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) ("[t]hat [plaintiff's] good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination").

Schreiner also disputes the ALJ's determination to afford "little weight" to his mother's testimony.  (Docket # 9-1 at 26).  As her decision demonstrates, the ALJ considered the information provided by Schreiner's mother, but found it inconsistent with the objective medical evidence and Schreiner's daily activities.  (Tr. 36).  Substantial evidence supports that assessment for the reasons the ALJ stated.  *See Palmer v. Astrue*, 2011 WL 3881024, *5 (D. Vt. 2011) ("[t]here is substantial evidence supporting the ALJ 's determination that statements by [plaintiff's family and friends] should be afforded little weight").  Thus, remand is not warranted on this basis.

## <u>CONCLUSION</u>

After a careful review of the entire record, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings (**Docket # 11**) is **GRANTED**.

Schreiner's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and Schreiner's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**


                                                    *s/Marian W. Payson*
                                                    _____
                                                    MARIAN W. PAYSON
                                                    United States Magistrate Judge

Dated:  Rochester, New York
        September 3, 2020